UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>JAIME GONZALEZ-DURAN,<br>also known as "Hummer," and<br><br>ELEAZAR MEDINA-ROJAS,<br>also known as "Chelelo,"<br><br>**Defendants.** | CASE NO. 1:08-CR-57 TNM |

**GOVERNMENT'S MOTION IN LIMINE
TO AUTHENTICATE AND ADMIT CERTAIN FOREIGN EVIDENCE**

The United States of America, by and through undersigned counsel, respectfully moves this Court to authenticate and admit certain evidence the United States received from Mexico in response to a formal request for judicial and legal assistance. Mexico provided information relevant to the Government's charges against the Defendants in this case, including documents containing the Defendants' statements and business records maintained by "The Company." Because Mexico provided certificates of authenticity for the documents it produced, the Court should find those documents are self-authenticating. With this core foundational requirement for admission met, the Court should admit foreign documents containing the Defendants' statements or constituting business records because that evidence is non-hearsay or falls within an exception to the hearsay rule.

**I.   BACKGROUND**

On May 9, 2013, a federal grand jury sitting in the District of Columbia returned a fourth superseding indictment charging the Defendants and numerous co-conspirators with conspiracy to manufacture and distribute five kilograms or more of a mixture or substance containing a

1

detectable amount of cocaine, a Schedule II controlled substance, and 1,000 kilograms or more of a mixture or substance containing a detectable amount of marijuana, a Schedule I controlled substance, knowing and intending that such substances would be unlawfully imported into the United States from Mexico in violation of 21 U.S.C. §§ 959, 960, and 963.  ECF No. 3. The charged conspiracy began in or around 2000 and continued until on or about February 2010. The indictment also includes a criminal forfeiture allegation for all proceeds of the charged conspiracy, pursuant to 21 U.S.C. §§ 853 and 970.  To face the charges in the fourth superseding indictment, Jaime Gonzalez-Duran was extradited to the United States on October 20, 2022, and Eleazar Medina-Rojas was extradited to the United States on July 6, 2023.  Trial is scheduled to begin on March 31, 2025.

At trial, the Government intends to prove that Messrs. Gonzalez-Duran and Medina-Rojas were high-ranking members of Los Zetas, an international drug trafficking organization ("DTO") allied with the Gulf Cartel, known together as "The Company," and, in their roles, unlawfully conspired to manufacture and distribute tonnage quantities of cocaine and marijuana for importation into the United States.  In support of its case, the Government expects to introduce, *inter alia*, evidence obtained pursuant to the United States' Mutual Legal Assistance Treaty ("MLAT") with Mexico.

## II.    SUMMARY OF THE RELEVANT EVIDENCE

Following the Defendants' extraditions to the United States, the United States issued several requests to competent authorities in Mexico for judicial and legal assistance pertaining to the investigation and prosecution of the Defendants and pursuant to the United States' MLAT with Mexico.  The United States requested that the Government of Mexico furnish the United States with certified official copies of the contents of Averiguación Previa ("A.P.") file number

"PGR/SIEDO/UEIDCS/147/2007," relating to the Mexican investigation surrounding Mr. Gonzalez-Duran's arrest in Mexico in November 2008 for violations of Mexican law; and file numbers PGR/SIEDO/UEIDCS/079/2007, PGR/SIEDO/UEIDCS/30/2016, and PGR/SIEDO/UEIDCS/236/2007, relating to arrests and case adjudications of Mr. Medina-Rojas in Mexico between 1996 and his extradition to the United States.  The Government of Mexico granted the United States' requests, and supplied its official public records, including, *inter alia*, (1) Messrs. Gonzalez-Duran and Medina-Rojas's statements and documentation of the rights of which the Defendants were advised, and (2) organizational ledgers maintained by members of Los Zetas and seized by Mexican authorities.  *See* Attachments A–B, E–F, and I.[1]  The official public records provided by Mexico were accompanied by attestations and certificates of authenticity issued by authorized officials.  *See* Attachments C–D, G–H.

With respect to the records from the Defendants' arrests, according to the information provided by the Government of Mexico, Mexican prosecutors advised Defendants of their rights, including the right to remain silent, and admonished them that, should they choose to make a statement, they had the right to have an attorney present.  Attachments A at 1, 3; Attachment E at 1.[2]  The foreign public records further demonstrate that, in the presence of their Mexican Federal

---

[1] To assist the Court in ruling on this motion in limine, the Government has attached an exemplar that is generally representative of the organizational ledgers referenced herein.  Due to the large volume of documents that comprise the ledgers, the Government has not attached all such documents returned by the Government of Mexico but will make them available to the Court should they be necessary or otherwise useful.

[2] The Government has attached versions of the Defendants' statements and foreign certifications translated from Spanish into English to assist the Court in its evaluation of this motion.  In advance of trial the Government will provide final translations of the foreign documents it intends to use at trial to the Defense for its review and will submit a stipulation to the Court as to the accuracy of those translations if the Defense is willing to so stipulate.  Additionally, through this Motion and Attachments A through C, the Government now discloses Mr. Gonzalez-Duran's statements from the time of his arrest and the corresponding certificate to Mr. Medina-Rojas.

Public Defenders, both Defendants volunteered to give a statement. Attachment A at 9; Attachment E at 2. The statements were committed to writing, and Defendants signed each page of their own statements in the right margin. Attachment B; Attachment F. The Defendants and their Public Defenders both signed the Defendants' respective statements. Attachment A at 15; Attachment B at 115 (Bates No. 77193); Attachment E at 9; Attachment F at 376 (Bates No. 387818) . As for the organizational ledgers, the Government of Mexico provided the United States with documents it seized from Los Zetas during the course of Mexico's investigation and that detail the DTO's drug transactions and other DTO business.

The records produced by Mexico to the United States are self-authenticating, and both the Defendants' statements reflected in those records and the organizational ledgers contained in those records are admissible under the Federal Rules of Evidence.

## ARGUMENT

**I.     The Government's Evidence Obtained by MLAT Requests to Mexico is Self-Authenticating.**

Authentication is a foundational requirement for the admission of a writing, including a foreign public document. *See United States v. Safavian*, 435 F. Supp. 2d 36, 38 (D.D.C. 2006) ("The Court need not find that the evidence is necessarily what the proponent claims, but only that there is sufficient evidence that the *jury* ultimately might do so."); *id.* at 41 (noting that challenges to the trustworthiness of evidence go to weight, not admissibility). Under Federal Rule of Evidence 902, certain evidence is self-authenticating, meaning it requires no extrinsic evidence of authenticity to be admitted. Rule 902(3) provides that foreign public documents, i.e., documents that "purport to be signed or attested by a person who is authorized by a foreign country's law to do so," are self-authenticating when the document is "accompanied by a final certification that certifies the genuineness of the signature and official position of the signer or attester—or of any

4

foreign official whose certificate of genuineness relates to the signature or attestation or is in a chain of certificates of genuineness relating to the signature or attestation." The documents the United States received from Mexico in response to its formal requests for judicial and legal assistance meet this requirement and are thus self-authenticating.

The relevant records contained within A.P. file numbers PGR/SIEDO/UEIDCS/147/2007, PGR/SIEDO/UEIDCS/079/2007, and PCR/SEIDO/UEIDCS/236/2007 contain certificates of authenticity from an authorized official in the Government of Mexico, the country that produced them. The certifying documents contain a final certification bearing the signature, name, and title of the authorized official, certifying the genuineness of the signature and official position of the signer, and attesting that the documents sent in response to the United States' request comprise certified copies of the files contained therein. *See* Attachments C–D, G–H. The records contained within these files therefore satisfy Rule 902(3)'s authentication requirements for foreign public records. The Government will provide its exhibit list consistent with the Court's pretrial scheduling order, which will include each of the foreign public records the Government intends to introduce at trial. For the reasons set forth herein, the Court should conclude that each of those exhibits are self-authenticating.

## II. **The Defendants' Statements Contained in Foreign Documents Are Admissible Non-Hearsay.**

As noted above, Mexico provided foreign public documents that contain the Defendants' statements at the time of their respective arrests. With the necessary foundation for those documents already established through Rule 902(3)'s self-authentication provision, the Court should admit these statements of a party-opponent as non-hearsay under Federal Rule of Evidence 801(d)(2).

Under Federal Rule of Evidence 801(d)(2)(A)-(B), statements that are not hearsay include

those made by an opposing party or adopted by an opposing party. To be admitted as non-hearsay, the moving party must show the statement was made by the opposing party and is offered against that party. *See, e.g.*, *United States v. Jordan*, 810 F.2d 262, 264 (D.C. Cir. 1987); *United States v. Jenkins*, 928 F.2d 1175, 1180 (D.C. Cir. 1991). So long as the statement does not violate the Defendant's constitutional rights, the opposing party's statement is admissible. *See United States v. Peterson*, 522 F.2d 661, 665 (D.C. Cir. 1975).

It is well-settled that statements elicited by foreign law enforcement are generally admissible in U.S. courts, regardless of whether any *Miranda*-type warnings were given, if the statements were voluntarily made. *United States v. Straker*, 800 F.3d 570, 614 (D.C. Cir. 2015). This is because courts have recognized that the *Miranda* exclusionary rule would have little, if any, deterrent effect upon foreign police officers. *In re Terrorist Bombings of the U.S. Embassies in East Africa*, 552 F.3d 177, 202 (2d Cir. 2008). The Government must prove voluntariness of a confession by a preponderance of the evidence. *Lego v. Twomey*, 404 U.S. 477, 489 (1972).

The Defendants made statements at the time of their arrests in Mexico to Mexican authorities pursuant to Mexico's own investigation of the Defendants. The official arrest records the United States received from Mexico indicate that the Defendants were advised of their rights under the laws of Mexico, including the right to remain silent and the right to have counsel present. Attachments A, E. The foreign public records indicate that the Defendants made their statements in the presence of their Federal Public Defenders. *Id*. The Defendants then acknowledged that they made their statements voluntarily, and the Defendants and their Federal Public Defenders signed the statements indicating they were made voluntarily and with the assistance of counsel. Attachment A at 15; B at 115 (Bates No. 77193); Attachment E at 9; Attachment F at 376 (Bates No. 387818). With this evidence, the Government has met its burden of proving that

6

Defendants' statements were voluntary. The Court should admit them as non-hearsay under Rule 801(d).

### III. Organizational Ledgers Provided by Mexico Are Admissible Business Records.

At trial, the Government also will seek to introduce documents Mexico seized from the Defendants and their co-conspirators, and then provided to the United States through its formal requests for assistance, recording The Company's drug transactions, including dates, quantities of narcotics shipments, prices of drug shipments, accounting of monies collected from and owed to various drug traffickers, payments made and received, entries pertaining to DTO personnel and other entries relating to organizational operation. These organizational ledgers were kept and maintained by co-conspirators under the guidance of the cooperating witnesses who will testify at trial. The ledgers were ultimately obtained during law enforcement seizures and produced to the United States pursuant to its MLAT request. The Court should admit these organizational ledgers because they are admissible both as business records under Federal Rule of Evidence 803(6)[3] and as co-conspirator statements under Federal Rule of Evidence 801(d)(2)(E).

*Business Records*. To admit documents under the business records exception contained in Rule 803(6), the Government must show that: (1) the record was made or transmitted by a person with knowledge at or near the time of the event recorded, Fed. R. Evid. 803(6)(A); (2) the record was kept in the course of a regularly conducted activity of the "business, organization, occupation,

---

[3] As noted above, as certified foreign public documents, these documents are self-authenticating under Rule 902(3), but even if they were not, a presumption of authenticity applies to business records. *Alsabri v. Obama*, 764 F. Supp. 2d 60, 66 (D.D.C. 2011), *aff'd* 684 F.3d 1298 (D.D.C. 2012) (noting that there is a presumption of authenticity relating specifically to business records "based on the principles underlying Federal Rule of Evidence 803(6)"); Fed. R. Evid. 901(b)(1), (4) (explaining that a document may be properly authenticated through either the "testimony of a witness with knowledge" or circumstantially by its "[a]ppearance, contents, substance, internal patterns, or other distinctive characteristics"); *see also Safavian*, 435 F. Supp. 2d at 38 (citations omitted) ("[t]he threshold for the Court's determination of authenticity is not high").

or calling," Fed. R. Evid. 803(6)(B); and (3) "making the record was a regular practice of that activity[,]" Fed. R. Evid. 803(6)(C). In determining whether these prerequisites exist, the Court may consider hearsay and other evidence not admissible at trial. *See* Fed. R. Evid. 104(a), 1101(d)(1); *see also Bourjaily v. United States*, 483 U.S. 171, 177–78 (1987). Courts have admitted ledgers documenting criminal activity when witness testimony or other evidence established that the ledgers meet Rule 803(6)'s requirements. *See, e.g.*, *United States v. Foster*, 711 F.2d 871, 882 (9th Cir. 1983) (admitting ledgers under Rule 803(6) based on a witness' testimony that it was her regular practice to contemporaneously enter drug amounts sold and money received on any particular day into the ledgers and that she relied on the ledgers); *United States v. Lizotte*, 856 F.2d 341, 344 (1st Cir. 1988) (holding that a ledger was admissible under Rule 803(6) where the entries were recorded contemporaneously with the documented drug sales); *see also, e.g.*, *United States v. Oneysmo*, No. 12-602, 2013 U.S. Dist. LEXIS 134718, at *6 (D.N.J. 2013) ("[T]he use of records in an illegal enterprise . . . does not prevent them from being admitted as business records.").

      There is no requirement that a witness who testifies about an organizational ledger to explain how it meets Rule 803's prerequisites also be the author of the record or be able to personally attest to its accuracy. Fed. R. Evid. 803(6); *see United States v. Smith*, 521 F.2d 957, 963 (D.C. Cir. 1975) ("A business record is admissible whether or not the maker is available to take the stand[.]") (footnote and citations omitted); *see also United States v. Keplinger*, 776. F.2d 678, 693 (7th Cir. 1985) ("[T]he business records exception contains no requirement that a 'qualified witness' must have personally participated in the creation or maintenance of a document, . . . nor even know who actually recorded the information"). Here, though, the Government will introduce testimony from witnesses who have direct knowledge of the recording practices that

8

were used to create the ledgers and the formatting and coded naming conventions used to do so.

The witnesses will specifically describe Los Zetas' practice of contemporaneously recording drug shipments and payments that were made and owed, and the consistent use of and reliance on the ledgers to maintain Los Zetas' operations. The witnesses will identify that the ledgers the Government seeks to introduce are indeed ledgers of members of Los Zetas that contain notations from the time period of the charged conspiracy and will explain the purpose and meaning of the notations therein. These witnesses will testify that the ledgers not only reflect regular drug transactions, but also payments to the organization's personnel and end-of-year bonuses paid to subordinate or lower-ranking members.[4] And at least one witness will describe steps taken to specifically educate others on how to properly create these records. This testimony satisfies Rule 803(6)'s requirements.

*Co-Conspirator Statements*. Rule 801(d)(2)(E) provides that statements made by a party-opponent's co-conspirator during and in furtherance of the conspiracy are not hearsay. Ledgers like those the Government will seek to introduce at trial are admissible as co-conspirator statements when the Government proves by a preponderance of the evidence that the author or authors of the ledgers were the defendants' co-conspirators, and that the ledger was made during the course of and in furtherance of the conspiracy. *See, e.g.*, *United States v. Gil*, 58 F.3d 1414, 1420 (9th Cir. 1995); *United States v. Arce*, 997 F.2d 1123, 1128 (5th Cir. 1993). The Government need not prove, however, the precise identity of the author or authors. *United States v. Martinez*, 430 F.3d 317, 326 (6th Cir. 2005) ("An anonymous statement may be admissible under Rule 801(d)(2)(E) if circumstantial evidence permits a finding by a preponderance of the evidence that

---

[4] The Government also anticipates introducing evidence of drug seizures that corroborate the ledgers.

9

there was a conspiracy involving the author and the defendant, and the statement was made in the course and furtherance of the conspiracy."); *United States v. Helmel*, 769 F.2d 1306, 1313 (8th Cir. 1985).  The testimony detailed above satisfies these requirements, and the organizational ledgers are therefore also admissible as co-conspirator statements.

For these reasons, pursuant to Rule 803(6) and Rule 802(d)(2)(E), the organizational ledgers constitute business records and co-conspirator statements and, after the Government has introduced the necessary witness testimony, the Government respectfully requests that the Court admit them into evidence.

### III.   Conclusion

For the reasons set forth above, the Government respectfully requests that this Court grant this motion, find that the foreign public documents the Government will seek to introduce at trial are self-authenticating, and admit the Defendants' statements and the DTO's ledgers contained in those foreign records into evidence.

Dated:  January 6, 2025

MARLON COBAR, Chief
Narcotic and Dangerous Drug Section
Criminal Division
U.S. Department of Justice

By: */s/ Janet Turnbull*
Janet Turnbull
Tara J. Arndt
Jayce L. Born
Trial Attorneys
Narcotic and Dangerous Drug Section
Criminal Division
U.S. Department of Justice
145 N. Street NE
Washington, D.C.  20530
Telephone: (202) 616-2576
Email: janet.turnbull2@usdoj.gov

## Certificate of Service

  I hereby certify that a copy of the foregoing was sent via ECF to counsel of record, this 6th day of January 2025.

                By: */s/ Jayce L. Born*
                   Jayce L. Born
                   Trial Attorney
                   Narcotic and Dangerous Drug Section
                   Criminal Division
                   U.S. Department of Justice