UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>v.<br><br>**ELEAZAR MEDINA-ROJAS,**<br>also known as "El Chelelo,"<br><br>**Defendant.** | **CASE NO. 1:08-CR-57-15 TNM** |

## GOVERNMENT'S SENTENCING MEMORANDUM

The United States of America, by and through its undersigned counsel, respectfully submits this sentencing memorandum in advance of the sentencing of Defendant Eleazar Medina-Rojas ("Medina-Rojas" or "Defendant"), which is scheduled for September 8, 2025.

The Defendant, who was a high-ranking member of a violent Mexican drug trafficking organization, pleaded guilty to conspiracy to distribute five kilograms or more of cocaine and one thousand kilograms or more of marijuana for importation into the United States. His U.S. Sentencing Guidelines ("U.S.S.G." or "Guidelines") range, as calculated by the U.S. Probation Office and reflected in the parties' plea agreement, is life imprisonment. For the reasons set forth below, and consistent with the Government's obligations set forth in the plea agreement, the Government requests that this Court sentence the Defendant to 420 months' imprisonment, five years of supervised release, and the mandatory $100 special assessment. Additionally, for the reasons stated in the Government's Motion for Preliminary Order of Forfeiture, ECF No. 687, the Court should order the Defendant to forfeit $26,500,000 in drug proceeds.

1

I. **FACTUAL BACKGROUND**

   A. **Offense Conduct**

This case is the product of an extensive, long-term investigation conducted by the Drug Enforcement Administration, Homeland Security Investigations, and Federal Bureau of Investigation into the drug-trafficking activities of the Gulf Cartel and Los Zetas, two related drug-trafficking organizations operating in Mexico. The Gulf Cartel was a violent Mexican criminal organization engaged in manufacturing, distributing, and importing large quantities of cocaine and marijuana into the United States, among other illegal activities. *See* Statement of Facts ("SOF"), ECF No. 673 ¶ 3; Final Presentence Report ("PSR") ¶ 26, ECF No. 741. "Los Zetas," a drug trafficking organization comprised primarily of Mexican military officers, first served as an armed militaristic wing for the Gulf Cartel to maintain control of drug trafficking routes throughout Mexico. SOF ¶ 3; PSR ¶ 26. Between 2000 and 2010, the Gulf Cartel and Los Zetas formed an alliance and operated collectively under the name "The Company." SOF ¶ 3; PSR ¶ 26.

The Company controlled hundreds of miles of Mexican territory along the border of Mexico and the United States. SOF ¶ 4; PSR ¶ 27. The Company divided its territory into areas known as "plazas" and assigned a leader, known as a "plaza boss." SOF ¶ 4; PSR ¶ 27. Using boats, planes, and motor vehicles, the Company transported large cocaine shipments from Colombia and Venezuela to Central America, and then to various plazas in Mexico. SOF ¶ 4; PSR ¶ 27. The Company had a significant distribution network to transport wholesale quantities of cocaine from Colombia, before its importation into Mexico and the United States. SOF ¶ 5; PSR ¶ 28. The Company used its control of strategic locations to import tonnage quantities of cocaine and marijuana into the United States. SOF ¶ 5; PSR ¶ 28. The Company shipped cocaine from Colombia to Mexico where the cocaine was stored until it was loaded onto tractor trailers for

2

transportation into the United States. SOF ¶ 5; PSR ¶ 28. The Company also transported via motor vehicles large quantities of marijuana grown in Mexico to the plazas before it was imported into the United States for distribution. SOF ¶ 5; PSR ¶ 28.

From at least 2000 through April 2008, the Defendant was a member of Los Zetas. SOF ¶ 2; PSR ¶ 25. He initially was responsible for enforcement actions and protection of drug trafficking routes, often through violence, threats of violence, and the use of weapons. SOF ¶ 6; PSR ¶ 29. The Defendant gained status in the organization, rising through the ranks to oversee and control The Company's drug trafficking activities in Mexico and directly aid its activities into and within the United States as a high-ranking plaza boss. SOF ¶¶ 2, 4, 6; PSR ¶¶ 25, 27, 29. Between 2006 and at least April 2007, the Defendant was a plaza boss in Monterrey, Nuevo Leon, Mexico, where approximately 80 other members of Los Zetas worked under his supervision. SOF ¶ 6; PSR ¶ 29. *See* Image 1 below.



*Image 1*

3

As a plaza boss in Monterrey, the Defendant directed The Company's cocaine- and marijuana-trafficking activities through areas within his command and control, and taxed other shipments of illegal drugs that crossed through controlled territory, often to enter the United States. SOF ¶ 6; PSR ¶ 29. As an example of the quantities managed by the Monterrey plaza, between June 2006 and July 2007, the Monterrey plaza purchased over 6,000 kilograms of cocaine at a total cost of more than $26,500,000 United States dollars. SOF ¶ 6; PSR ¶ 29.

During the conspiracy, the Defendant not only coordinated the shipment of cocaine and marijuana from Mexico into the United States using box trucks and other vehicles outfitted with hidden compartments, he also personally invested in drug loads and sold controlled substances on The Company's behalf. SOF ¶¶ 7, 8; PSR ¶¶ 30, 31. After the drugs were delivered in the United States, the Defendant would receive cash payment for the drugs in U.S. currency, often transported back to Mexico in tractor trailers or in vehicles with trap doors or other hidden compartments. SOF ¶ 7; PSR ¶ 30. The Defendant was personally responsible for the importation of more than 450 kilograms of cocaine and 90,000 kilograms of marijuana into the United States. SOF ¶ 8; PSR ¶ 30.

In furtherance of the conspiracy and The Company's drug trafficking activities, the Defendant carried weapons when conducting Company business, and he was responsible for exchanging weapons with other members of The Company. SOF ¶ 9; PSR ¶ 32. Due to his status in the organization, the Defendant also had a security detail that carried larger weapons, including rifles, and escorted him throughout Mexico. SOF ¶ 9; PSR ¶ 32. In fact, when the Defendant was arrested with several other members of the organization by Mexican authorities in April 2007, law enforcement recovered numerous weapons from the arrest scene. *See* Image 2 below.[1] Moreover,

---

[1] *See* Bates No. 00387312 within Bates No. 00387064-00387877.

4

the Defendant and other members of The Company used these weapons to commit acts of violence against rival drug trafficking groups during conflicts for control over drug plazas and trafficking routes. SOF ¶ 10; PSR ¶ 33.



*Image 2*

### B. Procedural History

On May 9, 2013, a federal grand jury returned a Fourth Superseding Indictment charging the Defendant and numerous co-conspirators with conspiracy to manufacture and distribute five kilograms or more of a mixture and substance containing a detectable amount of cocaine, a Schedule II controlled substance, and 1,000 kilograms or more of a mixture and substance containing a detectable amount of marijuana, a Schedule I controlled substance, knowing and intending that such substance(s) would be unlawfully imported into the United States from Mexico, in violation of 21 U.S.C. §§ 959(a), 960(a)(3), 960(b)(1)(B)(ii) and (G), and 963 (Count One). *See* Min. Order, Feb. 5, 2019; ECF No. 159.

5

On December 18, 2018, the Defendant was arrested in Mexico on a provisional arrest warrant issued in connection with the Fourth Superseding Indictment. The Defendant was extradited to the United States on or about July 6, 2023. The Defendant made an initial appearance on July 7, 2023, and was arraigned on the Fourth Superseding Indictment. Min. Order, July 7, 2013. On March 14, 2025, the Defendant entered a plea of guilty to Count One of the Fourth Superseding Indictment. Plea Agreement, ECF No. 672.

## II. STATUTORY PENALTIES

The Defendant now faces sentencing on Count One of the Fourth Superseding Indictment, conspiracy to manufacture and distribute five kilograms or more of a mixture or substance containing a detectable amount of cocaine and 1,000 kilograms or more of a mixture or substance containing a detectable amount of marijuana intending, knowing, and having reasonable cause to believe that the controlled substances would be unlawfully imported into the United States, in violation of 21 U.S.C. §§ 959(a), 960(a)(3), 960 (b)(1)(B)(ii) and (G), and 963. As noted by the plea agreement and the PSR, Count One is punishable by a statutory mandatory minimum term of imprisonment of ten (10) years and a maximum term of life imprisonment, a fine not to exceed $10,000,000, and a period of supervised release of at least five (5) years. 21 U.S.C. § 960(b)(1). Plea Agreement at 1-2; PSR ¶¶ 145, 152, 165.

## III. SENTENCING GUIDELINES AND GUIDELINES ANALYSIS

As the Supreme Court has instructed, the Court "should begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *United States v. Gall*, 552 U.S. 38, 49 (2007). "As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark" for determining a defendant's sentence. *Id*.

The Guidelines are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions." *Id*.

The Government agrees with the Guidelines calculation set forth in the PSR:

| | | |
|---|---|---|
| Base Offense Level | 38 | The Defendant is held accountable for more than 90,000 kilograms of marijuana and 450 kilograms of cocaine. The Defendant is accountable for a converted drug weight of 90,000 kilograms, U.S.S.G. § 2D1.1(a)(5) and (c)(1). |
| Specific Offense Characteristics | +2 | A dangerous weapon (firearm) was possessed, U.S.S.G. § 2D1.1(b)(1). |
| | +2 | The Defendant used violence, made a credible threat to use violence and directed the use of violence, U.S.S.G. § 2D1.1(b)(2). |
| Role Adjustment | +4 | The Defendant was an organizer, leader, manager, or supervisor in any criminal activity, U.S.S.G. § 3B1.1(a). |
| Adjusted Offense Level | 46 | |
| Acceptance of Responsibility | -3 | The Defendant clearly demonstrated acceptance of responsibility, assisted authorities in the investigation or prosecution of his own misconduct, and timely notified authorities of his intention to enter a guilty plea, U.S.S.G. § 3E1.1(a), (b). |
| **Total Offense Level** | **43** | **The Total Offense Level is 43** |

Plea Agreement at 2; PSR ¶¶ 84-96.

The Defendant has prior convictions in the United States, and the Probation Office correctly calculated the Defendant's criminal history category as II. PSR ¶¶ 98-105. The Probation Office correctly determined that the applicable Guidelines range for a total offense level of 43 and a criminal history category of II is life imprisonment.[2] PSR ¶ 146.

Although the Government agrees with the Guidelines range as calculated by the Probation Office, under the parties' plea agreement, the Government agreed not to recommend a sentence of more than 420 months' imprisonment, and, for the reasons that follow, the Government is recommending a sentence of 420 months' imprisonment.

---

[2] The Probation Office has not yet provided a sentencing recommendation.

## IV. SENTENCING FACTORS UNDER 18 U.S.C. § 3553(a)

After correctly calculating the advisory Guidelines range, this Court must consider the factors set out in 18 U.S.C. § 3553(a). *Gall*, 552 U.S. at 49–50. Some of the factors this Court must consider include the nature and circumstances of the offense, § 3553(a)(1); the history and characteristics of the defendant, *id.*; the need for the sentence to reflect the seriousness of the offense and promote respect for the law, § 3553(a)(2)(A); the need for the sentence to afford adequate deterrence, § 3553(a)(2)(B)-(C); and the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct, § 3553(a)(6). Here, each Section 3553(a) factor weighs heavily in favor of a lengthy term of incarceration.

### A. Nature and Circumstances of the Offense

The nature and circumstances of the Defendant's crime support a significant term of incarceration. Defendant's conviction arises out of his participation in a drug trafficking organization that has distributed and imported massive amounts of cocaine and marijuana into the United States and utilized extreme violence to maintain control of drug trafficking routes throughout Mexico.

The Defendant played a vital role in that organization. He initially was responsible for enforcing and protecting The Company's drug trafficking routes, and he often used weapons and extreme violence to do so, a hallmark characteristic of Los Zetas during the charged conspiracy. *See* SOF ¶ 6; PSR ¶ 29; Fifth Superseding Indictment, ECF No. 578 (charging two leaders of Los Zetas and the Defendant's co-conspirators with engaging in a continuing criminal enterprise consisting of acts of murder of other drug traffickers, Mexican citizens, and Mexican law enforcement officers). The Defendant rose through the ranks to become a high-ranking member of

8

Los Zetas, serving as the plaza boss for Monterrey, Mexico for more than a year. SOF ¶¶ 2, 4, 6; PSR ¶¶ 25, 27, 29. He was actively involved in managing the activities of The Company in Mexico, including the coordination of cocaine and marijuana shipments into the United States and receiving bulk cash—drug proceeds from sales of the illicit substances in the United States—in Mexico. SOF ¶¶ 7, 8; PSR ¶¶ 30, 31. During his reign as plaza boss, tonnage quantities of cocaine moved through the Monterrey plaza under Defendant's supervision. SOF ¶ 6; PSR ¶ 29. In total, the Defendant was directly responsible for the importation of more than 450 kilograms of cocaine and 90,000 kilograms of marijuana into the United States. SOF ¶ 8; PSR ¶ 31.

## B. History and Characteristics of the Defendant

The Defendant's history and characteristics warrant a sentence of 420 months in prison. The Defendant is a 53-year-old citizen of Mexico. He reports some medical issues but there is no indication that those medical issues are so serious as to warrant a departure or variance from the Guidelines here. Though Defendant reports having a difficult upbringing, limited education, and spotty employment history, these obstacles do not diminish Medina-Rojas's knowing and willing decision to profit from international narcotrafficking when the opportunity presented itself. And in fact, his time spent with The Company, one of the most violent criminal drug trafficking organizations in the world, appears to be his most consistent "employment" in his lifetime. He chose to engage in this criminal conduct for financial benefit, and he chose to utilize extreme violence and possess weapons to further The Company's drug trafficking activities.

## C. Need for the Sentence Imposed to Reflect the Seriousness of the Offense and Promote Respect for the Law

A lengthy term of imprisonment for Medina-Rojas is necessary to reflect the seriousness of his offense and promote respect for the law. Congress has gone to great lengths to send the message to drug traffickers that the United States will not tolerate the importation and trafficking

9

of illicit drugs in the United States. In 1970, Congress passed the Comprehensive Drug Abuse Prevention and Control Act ("CDAPCA"). Pub. L. No. 91-513, 84 Stat. 1236 (1970) (codified as amended at 21 U.S.C. §§ 801-970). Title III of the 1970 Act—referred to as the Controlled Substances Import and Export Act of 1970—adopted strict regulatory requirements for importation and exportation of controlled substances. *See* 84 Stat. 1289, codified at 21 U.S.C. §§ 951-971. It also criminalized the manufacture and distribution of a controlled substance "intending" or "knowing" that the controlled substance would be unlawfully imported into the United States. Pub. L. No. 91-513, Title III, § 1009 (Oct. 27, 1970), codified at 21 U.S.C. § 959. Through Section 959, Congress sought to eradicate the international drug trade insofar as the illicit substances were bound for the United States. Congress recognized that "illegal importation, manufacture, distribution, and possession and improper use of controlled substances have a substantial and detrimental effect on the health and general welfare of the American people." 21 U.S.C. § 801(2).

Defendant's role in Los Zetas and participation in the charged conspiracy falls squarely within the category of conduct that Congress targeted through the passage of the Controlled Substances Import and Export Act of 1970. A sentence of 420 months' imprisonment for the Defendant, a Mexican national, who played a key role in the unlawful importation of massive quantities of controlled substances into the United States will send a message that the Defendant committed a serious offense against the United States. Medina-Rojas's conduct not only contributed to the devastation of communities on both sides of the border, but it also directly undermined the rule of law as he and his co-conspirators, including many who reported to him in the Monterrey plaza, sought to control and enforce Los Zetas' territory through the illegitimate use of violence. Additionally, imposition of a lengthy sentence will promote respect for the law by encouraging other foreign drug traffickers—or those contemplating expansion of their illicit

10

crimes to the United States—to reconsider committing crimes against the United States because punishment is certain.

### D. Need for the Sentence to Afford Adequate Deterrence

Deterrence encompasses two goals: general deterrence, or the need to deter crime generally, and specific deterrence, or the need to protect the public from further crimes by this defendant. 18 U.S.C. § 3553(a)(2)(B)-(C); *United States v. Russell*, 600 F.3d 631, 637 (D.C. Cir. 2010). Both weigh in favor of a 420-month term of imprisonment here.

***General Deterrence***. A significant sentence is needed "to afford adequate deterrence to criminal conduct" by others. 18 U.S.C. § 3553(a)(2)(B). Importation of controlled substances from South and Central America and Mexico into the United States still occurs in large quantities. *See* U.S. Customs and Border Protection Drug Seizure Statistics, https://www.cbp.gov/newsroom/stats/drug-seizure-statistics (last visited May 21, 2025). Given the adverse impact that drug trafficking—and its associated violence—has on society and the serious detrimental effects of cocaine in communities in the United States and abroad, it is important that the Court impose a sentence that deters others. As this case shows, it is extraordinarily difficult to capture high-ranking cartel members and bring them to justice: Medina-Rojas was first indicted in 2009 before the Fourth Superseding Indictment was filed in 2013; Medina-Rojas was arrested by Mexican authorities in 2018; he was not extradited to the United States until July 2023, and only now, almost two years later, is he facing sentencing for his conduct dating back to 2000. A 420-month sentence provides critical general deterrence to other high-ranking members of drug trafficking organizations, demonstrating that participation in narcotics importation into the United States will result in substantial prison sentences. Indeed, because Los Zetas is a well-known drug-trafficking organization, international drug traffickers are likely to learn of the sentence in this

case, which would mean a heavy sentence is likely to be a strong general deterrent, while a lighter one may have the opposite effect.

*Specific Deterrence*. Medina-Rojas's actions demonstrate the need for a lengthy sentence to provide specific deterrence to this particular Defendant. Given the Defendant's acceptance of responsibility, the Government is hopeful that the Defendant will not reoffend following his release from custody. However, the Defendant's background raises concerns regarding recidivism. The Defendant served a violent drug trafficking organization for more than eight years, and he rose through the ranks to oversee dozens of other cartel members, using violence and weapons to solidify his and Los Zetas' reign. His time in the cartel is the steadiest "employment" he has maintained in his life. His years of dedication to criminal activities, including acts of violence intended to protect his organization and its illicit drug trafficking against rival drug cartels, indicate that there is a high risk that the Defendant will reoffend. Only a sentence of 420 months' imprisonment is sufficient to deter the Defendant from engaging in similar conduct in the future.

  **E. Need to Avoid Unwarranted Sentencing Disparities**

Finally, as to 18 U.S.C. § 3553(a)(6)—"the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct"—the statute requires a specific evaluation of the compared defendants' records and conduct. When determining whether a sentence creates an unwarranted disparity, the Court should also consider, *inter alia*, a defendant's acceptance of responsibility, the nature and extent of a defendant's participation in the criminal activity, a defendant's criminal history, and whether and to what extent a defendant cooperated. *See, e.g., United States v. Mejia*, 597 F.3d 1329, 1344 (D.C. Cir. 2010) (concluding that difference in sentences was "entirely explained" by co-defendant's acceptance of responsibility and thus any disparity resulting from defendant's "harsher" sentence

was not unwarranted). A defendant is only entitled to "a weighing of the section 3553(a) factors that are relevant to [his] case, not to a particular result." *United States v. Carrasco-De-Jesus*, 589 F.3d 22, 29 (1st Cir. 2009).

Several of Medina-Rojas's co-defendants have been sentenced to date, including several similarly situated co-defendants. Each is discussed in turn, and each received a sentence commensurate to or above the Government's recommended sentence of 420 months' imprisonment in this case.

### Jaime Gonzalez-Duran, Case No. 08-CR-057 (D.D.C.)

During the course of the charged conspiracy, Gonzalez-Duran served as a plaza boss for Los Zetas in Matamoros, Miguel Aleman, and Reynosa, where he directed Los Zetas' drug-trafficking activities in those areas. Gonzalez-Duran was held accountable for more than 450 kilograms of cocaine and 90,000 kilograms of marijuana, resulting in a base offense level of 38. He received base offense level increases for possession of a dangerous weapon (two levels); use of violence (two levels); bribery of a law enforcement officer (two levels); organizing or leading a criminal activity that involved five or more participants or was other extensive (four levels); and use of body armor (two levels). After a three-level reduction for acceptance of responsibility and after accounting for the limitations of the Guidelines, Gonzalez-Duran's total offense level was 43 with a Criminal History Category of I, resulting in a Guidelines range of life imprisonment.

Pursuant to its obligations under the parties' plea agreement in that case, the Government recommended a sentence of 420 months' imprisonment. The Court sentenced Gonzalez-Duran to 420 months' imprisonment, ECF No. 716.

13

**Aurelio Cano-Flores, Case No. 08-CR-057 (D.D.C.)**

During the course of the charged conspiracy, Cano-Flores served as a plaza boss for the Gulf Cartel in the border area called Los Guerra. Cano-Flores began working for the Cartel while he was a police officer in Mexico and eventually worked his way up the ranks to become a plaza boss. Cano-Flores was held accountable for more than 450 kilograms of cocaine and 90,000 kilograms of marijuana, resulting in a base offense level of 38. He received base offense level increases for possession of a dangerous weapon (two levels); direct involvement in the importation of narcotics (two levels); abuse of a public trust (two levels); and managing or supervising a criminal activity that involved five or more participants or was other extensive (three levels). Though he was not eligible for an acceptance of responsibility reduction, his adjusted offense level was reduced to 43 to reflect the limits of the Sentencing Guidelines, and, with a Criminal History Category of I, his resulting Guidelines range was life imprisonment. The Government recommended a sentence of life imprisonment. The Court sentenced him to 420 months' imprisonment, ECF No. 172.

**Jorge Eduardo Costilla-Sanchez, Case No. 19-CR-00739-1 (S.D. Tex.), transferred pursuant to Fed. R. Crim. P. 20 from Case No. 08-CR-057 (D.D.C.)**

Costilla-Sanchez was charged with Medina-Rojas in the instant case, though his case was transferred to the Southern District of Texas for resolution pursuant to Federal Rule of Criminal Procedure 20.[3] Costilla-Sanchez served as a municipal police officer in Mexico before he joined and became a high-ranking member of The Company, working directly under the cartel leader Osiel Cardens Guillen. He used his Mexican law enforcement contacts to facilitate the distribution

---

[3] Costilla-Sanchez also was charged in the Southern District of Texas with conspiracy to possess with intent to distribute a quantity exceeding 100 kilograms of marijuana, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(B) and threatening to assault and murder a federal agent, in violation of 18 U.S.C. § 115. *See* Case No. 00-CR-00118-S1-006 (S.D. Tex.).

and transportation of cocaine and marijuana in Mexico for importation into the United States. Following Cardenas Guillen's arrest in 2003, Costilla-Sanchez took control as leader of The Company, responsible for overseeing all operations, including organizing cocaine and marijuana shipments, controlling drug trafficking routes and plazas, employing armed hitmen and enforcers, overseeing the repatriation of bulk cash shipments of U.S. currency drug proceeds to Mexico, and directing the activities of other high-ranking members of The Company. Costilla-Sanchez pled guilty to Count One of the Fourth Superseding Indictment in this case, as well as to three counts in the Southern District of Texas indictment. After calculating his offense level between both indictments, pursuant to the Guidelines' grouping rules, and considering the Government's sentencing recommendation, the Court sentenced him to life imprisonment in both the District of Columbia case and the Southern District of Texas case, to run concurrently. Case No. 1:19-cr-00739 (S.D. Tex.), ECF No. 43 (D.C. case); Case No. 00-CR-00118 (S.D. Tex), ECF No. 452 (S.D. Tex. case).[4]

***

Each of these similarly situated comparators, all of whom are the Defendant's co-defendants and co-conspirators and have similar Guidelines calculations, supports that a sentence of 420 months' imprisonment is sufficient to avoid unwarranted sentencing disparities.

II.   **CONCLUSION**

For the reasons set forth above, the Government requests that the Court impose a sentence of 420 months' imprisonment, five years of supervised release, and the mandatory $100 special assessment.

---

[4] The Government's sentencing memo in the case, as well as the Court's statement of reasons, are under seal. The Government can make the documents available to the Court for *in camera* inspection upon request.

Dated:  August 29, 2025

                MARLON COBAR, Chief
                Narcotic and Dangerous Drug Section
                Criminal Division
                U.S. Department of Justice

By:  */s/ Jayce Born*
      Jayce Born
      Trial Attorney
      Narcotic and Dangerous Drug Section
      Criminal Division
      U.S. Department of Justice
      145 N. Street NE
      Washington, D.C.  20530
      Telephone: (202) 616-2656
      Email: Jayce.Born@usdoj.gov

## **CERTIFICATE OF SERVICE**

    I hereby certify that a copy of the foregoing was sent via ECF to counsel of record for the Defendant, this 29th day of August, 2025.

                                                By: */s/ Jayce Born*
                                                     Jayce Born